**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAPTA GLOBAL, INC., | CIVIL ACTION NO. 15-3757 (JLL) |
| Plaintiff, | **O P I N I O N** |
| v. | |
| ICON SOLUTIONS, INC., et al., | |
| Defendants. | |

**LINARES, Chief District Judge**

This action concerns a contractual dispute between the plaintiff, Sapta Global, Inc. (hereinafter, "Sapta"), and the defendants, Icon Solutions, Inc. (hereinafter, "Icon"), and Naveen Mudireddy. (ECF No. 1.) Icon and Mudireddy now move pursuant to Federal Rule of Civil Procedure (hereinafter, "Rule") 56 for summary judgment in their favor: (1) as to Sapta's claims that are asserted against them; (2) as to their counterclaim against Sapta for the amount of $23,760 that is allegedly due and owing; and (3) for an award for prejudgment interest upon the amount of $23,760 in the counterclaim. (ECF No. 35 through ECF No. 35-8; ECF No. 40 through ECF No. 40-4.) Sapta opposes the motion. (ECF No. 38 through ECF No. 38-6.)

The Court resolves the motion for summary judgment upon a review of the papers and without oral argument. *See* L. Civ. R. 78.1(b). For the following reasons, the Court:

(1) grants the motion insofar as it concerns Sapta's claims and the counterclaim by Icon and Mudireddy for $23,760; and (2) denies the motion insofar as it concerns an award of prejudgment interest on the amount of $23,760 without prejudice.

## BACKGROUND

The Court presumes that the parties are familiar with the underlying facts and procedural history of the action that the Court has set forth in an earlier Opinion, and thus the Court will only set forth a brief summary here. (ECF No. 13 (an Order dated August 17, 2015, which denied the motion by Icon and Mudireddy to dismiss the complaint); ECF No. 12 (the Opinion underlying that Order).)

An entity known as Randstad Technologies LP (hereinafter, "Randstad") entered into a contract with Goodyear Tire & Rubber Company (hereinafter, "Goodyear") to provide a consultant to Goodyear to perform certain tasks concerning information technology issues (hereinafter, "the IT Project"). (ECF No. 35-1 at 2; ECF No. 35-4 at 12.) Randstad then entered into a contract with Sapta (hereinafter, "the Sapta-Randstad Agreement") to provide such a consultant to Randstad, who Randstad would then provide to Goodyear. (ECF No. 35-1 at 2, 5; ECF No. 35-3 at 28.) Sapta, in turn, entered into a contract with Icon (hereinafter, "the Sapta-Icon Agreement") to provide Sapta with such a consultant, *i.e.*, Mudireddy, who Sapta had become aware of through a reference. (ECF No. 35-1 at 4 –5; ECF No. 35-4 at 2; ECF No. 35-4 at 13.)

As a result of the aforementioned contractual arrangements: (1) Icon provided Mudireddy to Sapta; (2) Sapta provided Mudireddy to Randstad; (3) Randstad provided

Mudireddy to Goodyear; and (4) Mudireddy worked on the IT Project at Goodyear. (ECF No. 35-1 at 4–5; ECF No. 35-3 at 28–36; ECF No. 35-4 at 2; ECF No. 35-5 at 4, 14.) Furthermore, as a result of these contractual arrangements, the amount that Icon was ultimately paid was diluted, because: (1) Goodyear paid Randstad a certain amount; (2) Randstad then paid Sapta, and Randstad kept a portion of the amount that was paid to it by Goodyear for itself; and (3) Sapta then paid Icon, and Sapta kept a portion of the amount that was paid to it by Randstad for itself. (ECF No. 35-1 at 4, 6; ECF No. 35-2 at 7; ECF No. 35-4 at 18, 23.)

In addition to the aforementioned contractual arrangements, Sapta had a separate contract with Mudireddy (hereinafter, "the Sapta-Mudireddy Agreement"), wherein Mudireddy agreed to permit only Sapta to have discussions with Randstad concerning the payment for Mudireddy's services for the IT Project. (ECF No. 35-1 at 5; ECF No. 35-4 at 7.) Stated differently, Mudireddy was barred under the terms of the Sapta-Mudireddy Agreement from discussing the payment for his services with Randstad directly.

Mudireddy's work on the IT Project was completely overseen and directed by Goodyear or by Randstad. (ECF No. 35-1 at 4, 6; ECF No. 35-2 at 5, 7, 12; ECF No. 40-3 at 1–2.) Sapta had no technical input in the IT Project. (ECF No. 35-1 at 6; ECF No. 35-4 at 16; *see also* ECF No. 35-4 at 12 (Sapta's former executive vice president admitting in a deposition that the project manager for the IT Project was "[n]ot with Sapta," and that the project manager would have been employed by either Randstad or Goodyear, although he was unsure as to which one).)

3

Icon held Mudireddy's work visa. (ECF No. 35-1 at 8.) Furthermore, Mudireddy's salary and benefits were provided by Icon directly to Mudireddy. (ECF No. 35-4 at 2–3; ECF No. 35-5 at 8.) Indeed, the Sapta-Icon Agreement provided that any consultants in Mudireddy's position:

> shall remain the employees of [Icon], and [Icon] shall be solely responsible for payment of all wages, payroll taxes, Social Security taxes, Workers' Comp. Premiums and other costs and charges incurred in connection with its employees. It is expressly understood by the parties hereto that all personnel supplied by [Icon] to SAPTA GLOBAL shall remain under the employ of [Icon], and SAPTA GLOBAL shall have no obligation to compensate the personnel. [Icon] further warrants and represents to SAPTA GLOBAL that all personnel it provides for placement by SAPTA GLOBAL shall be paid the prevailing wage for his or her level of expertise.

(ECF No. 35-4 at 3.)

At some point, Randstad terminated the Sapta-Randstad Agreement, and then entered into a contract with Icon to provide Mudireddy's services to Randstad, and Randstad in turn provided Mudireddy to Goodyear for the IT Project. (ECF No. 35-1 at 6; ECF No. 35-4 at 36.) Sapta was removed from the overall arrangement completely. As a result: (1) Goodyear paid Randstad a certain amount for Mudireddy's services in relation to the IT Project; (2) Randstad directly paid Icon, and Randstad kept a portion of the amount paid to it by Goodyear for itself; and (3) Icon realized more profit.

Sapta now alleges that Icon breached the Sapta-Icon Agreement by bypassing Sapta to deal with Randstad directly. Sapta also alleges that Mudireddy breached the Sapta-Mudireddy Agreement by dealing with Randstad directly. Icon and Mudireddy, in

turn, assert a counterclaim for the breach of the Sapta-Icon Agreement against Sapta for Sapta's alleged failure to pay the amount of $23,760 that is due and owing for the services performed by Mudireddy for Goodyear on the IT Project, plus prejudgment interest thereon. (ECF No. 14; *see also* ECF No. 35-6 at 12–14 (copies of the invoices from Icon that remain unpaid by Sapta).) In support of this counterclaim, Icon and Mudireddy argue that they resorted to directly engaging with Randstad only because Sapta had failed to keep up with the payments for Mudireddy's services. (ECF No. 35-2 at 4.)

In support of their pending motion for summary judgment, Icon and Mudireddy argue that Sapta was acting as an employment agency. (ECF No. 35-2.) This is problematic, argue Icon and Mudireddy, because Sapta has failed to comply with the licensing requirements for an employment agency pursuant to New Jersey law. As a result of this failure, argue Icon and Mudireddy, Sapta is barred from seeking any damages in relation to the Sapta-Icon Agreement and the Sapta-Mudireddy Agreement from Icon and Mudireddy. (Id.) In contrast, Sapta argues that issues of fact remain as to whether it was acting as an employment agency in this instance. (ECF No. 38-3.)

## DISCUSSION

### I. Summary judgment

It is not necessary for the Court to restate the standard for resolving a motion for summary judgment that is made pursuant to Rule 56, because that standard has been already enunciated. *See* Fed.R.Civ.P. 56(a) (providing for an award of summary

judgment if there is no genuine dispute of material fact and the movant is entitled to judgment as matter of law); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (setting forth the summary judgment standard); *United States ex rel. Kosenke v. Carlisle HMA, Inc.*, 554 F.3d 88, 94 (3d Cir. 2009) (setting forth the summary judgment standard).

## II. Employment agencies in New Jersey

Under the provisions of the New Jersey Private Employment Agency Act (hereinafter, "the NJPEAA"), an employment agency is defined in relevant part as any entity that:

> for a fee, charge or commission . . . [p]rocures or obtains, or offers, promises or attempts to procure, obtain, or assist in procuring or obtaining employment for a job seeker or employees for an employer; or . . . [s]upplies job seekers to employers seeking employees on a part-time or temporary assignment basis who has not filed notification with the Attorney General [under certain circumstances] . . . ; or . . . [a]cts as a placement firm, career counseling service, or resume service[.]

N.J.S.A. 34:8-43.

The NJPEAA, insofar as it concerns employment agencies, also provides that an entity:

> shall not bring or maintain an action in any court of this State for the collection of a fee, charge or commission for the performance of any of the activities regulated by [N.J.S.A. 34:8-43] without alleging and proving licensure . . . [with the New Jersey Department of Consumer Affairs], as appropriate, at the time the alleged cause of action arose.

N.J.S.A. 34:8-45(b). Stated differently, an employment agency is barred under New

6

Jersey law from seeking to recover damages for an amount that it would otherwise be entitled to collect if that employment agency failed to procure the required license to operate.

### III. Icon and Mudireddy are entitled to summary judgment in their favor as to Sapta's claims that are asserted against them

The Court concludes that Sapta was acting as an employment agency without the proper license during its involvement in the multi-party arrangement for the provision of Mudireddy's services to Goodyear. There are several cases from the New Jersey state courts that buttress the Court's conclusion here.

For instance, in *Data Informatics, Inc. v. AmeriSOURCE Partners*, 338 N.J. Super. 61 (N.J. App. Div. 2001), the plaintiff (Data Informatics) entered into an agreement with the defendant (AmeriSOURCE) to provide the services of AmeriSOURCE's consultant employee to the plaintiff's client (Alliance) for an information technology project. *Id.* at 64–65. Under this arrangement: (1) Alliance paid Data Informatics, which kept a portion of that payment for itself as a fee; (2) Data Informatics in turn paid AmeriSOURCE; (3) AmeriSOURCE was responsible for providing a salary and benefits to its employee; and (4) AmeriSOURCE's employee was not directed, overseen, or provided technical input by Data Informatics for the Alliance project in any way. *Id.* at 66–69. Eventually, AmeriSOURCE directly entered into a contract with Alliance to place its employee with Alliance, thereby causing Alliance to terminate its relationship with Data Informatics. *Id.* at 63–67.

Data Informatics then brought an action against AmeriSOURCE and its employee for breach of contract and other claims. However, the claims asserted by Data Informatics were disposed of in favor of AmeriSOURCE on summary judgment, because the aforementioned facts demonstrated that Data Informatics was acting as an unlicensed employment agency. Thus, the state court held that the claims by Data Informatics of any sort to recover for its lost fees or damages caused by AmeriSOURCE or its employee — in contract, in tort, or otherwise — were barred for its failure to comply with the NJPEAA. *Id.* at 78–80.

The facts and the contractual arrangements presented in *Data Informatics* are strikingly similar to the instant case. In both cases: (1) the plaintiff initially provided the services of the defendant's employee to the plaintiff's client; (2) the work of the defendant's employee was not under the control or the direction of the plaintiff; (3) the defendant's employee was paid by the defendant; and (4) the defendant and the plaintiff's client eventually came to their own agreement concerning the services of the defendant's employee, thereby cutting out the plaintiff. Just as the state court in *Data Informatics* found that the plaintiff therein was acting as an unlicensed employment agency that was barred from seeking recovery against the defendant and the defendant's employee, so too does this Court conclude that Sapta was acting as an unlicensed employment agency. As a result, Sapta is barred from seeking recovery from Icon or Mudireddy on its claims here. *Id.* at 78–80 (holding that the NJPEAA is designed to be regulatory and penal in nature, and that any equitable principles will not defeat its reach).

In *Verrazano Consulting Solutions, LLC v. JSMN International, Inc.*, No. A-1597-12T3, 2014 WL 3510598 (N.J. App. Div. July 17, 2014), the plaintiff (Verrazano) entered into an agreement with the defendant (JSMN) to place JSMN's employee as an information technology consultant with Verrazano's client (Barclays Capital, Inc., or Barclays). *Id.* at *1. Under this arrangement: (1) Barclays paid Verrazano, which kept a portion of that payment for itself as a fee; (2) Verrazano in turn paid JSMN; (3) JSMN was responsible for providing the salary and benefits to its employee; and (4) JSMN's employee was not directed, overseen, or provided technical input by Verrazano for the project at issue in any way. *Id.*

A dispute arose between Verrazano and JSMN, and thereafter Verrazano brought an action to compel JSMN and its employee to share the compensation that they apparently began to receive from Barclays directly. The state court found that the aforementioned facts demonstrated that Verrazano was acting as an unlicensed employment agency, and thus it was barred from seeking any recovery from JSMN and its employee in that instance. *Id.* at *3. Again, the facts set forth in *Verrazano Consulting Solutions* and the facts in the dispute of the instant case are strikingly similar, and, thus, this Court concludes that Sapta was acting as an employment agency without the required license, and is therefore barred from seeking recovery from Icon and Mudireddy under New Jersey law. *See also IFuturistics, Inc. v. Avacorp, LLC*, No. A-5658-11T3, 2013 WL 3762885 (N.J. App. Div. July 19, 2013) (in a multi-party arrangement concerning the provision of the services by an information technology consultant, where the plaintiff did not control or supervise the consultant at issue, and

where the plaintiff would have collected a fee, granting summary judgment to a defendant against the plaintiff because the plaintiff acted as an employment agency without a license).

Sapta argues that there is a question of fact remaining as to which entity supervised or controlled Mudireddy, and that the record only demonstrates at this juncture that Sapta was not Mudireddy's supervisor for the IT Project. (ECF No. 38-3 at 6.) However, as discussed above, the record demonstrates that either Randstad or Goodyear indeed supervised Mudireddy. Furthermore, the fact that Sapta was clearly not involved in overseeing Mudireddy's work, yet expected to collect a fee based upon the provision of his services on the IT Project, supports the arguments by Icon and Mudireddy that Sapta was acting as an employment agency as defined by the NJPEAA.

Sapta also argues that Randstad could be viewed as the actual employment agency in this multi-party arrangement. (ECF No. 38-3 at 8.) However, it is the relationship between Sapta and Icon that is being analyzed here, and the Court will draw no conclusions as to the potential success of a hypothetical claim against Randstad by any of the parties herein.

For the Court to permit Sapta to enforce the Sapta-Icon Agreement or the Sapta-Mudireddy Agreement and to "recover the unpaid sums otherwise due," in view of Sapta's failure to obtain the required license to operate as an employment agency in New Jersey, "would strip the [NJPEAA] of the gravitas intended by the Legislature as a remedial statute." *IFuturistics*, 2013 WL 3762885, at *5. Thus, the motion by Icon and

Mudireddy for summary judgment insofar as it concerns Sapta's claims that are asserted against them is granted.

## IV. Counterclaim for $23,760

It is undisputed that Sapta has failed to honor certain invoices submitted to it by Icon for Mudireddy's services that amount to $23,760. (ECF No. 35-2 at 16.) Furthermore, it is undisputed that Sapta never objected to the amounts sought by Icon in those invoices. In addition, as Sapta's claims against Icon and Mudireddy are now barred by the NJPEAA, Sapta cannot argue that it is rightfully withholding payment to Icon and Mudireddy in order to set off the alleged damages linked to Sapta's claims. (ECF No. 38-3 at 18–20.)

Therefore, Icon and Mudireddy are entitled to summary judgment in their favor on the counterclaim for $23,760 that is owed under the terms of the Sapta-Icon Agreement. *See Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (holding that the breach of a contract is proven if there is: (1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) the party seeking damages has performed its own duty under the terms of that contract).

## V. Prejudgment interest

Icon and Mudireddy seek an award of prejudgment interest on the amount of $23,760 that they are owed. (ECF No. 35-2 at 16.)

The Court is well aware that there is "a strong presumption in favor of awarding prejudgment interest." *Marcus v. PQ Corp.*, 458 F. App'x 207, 214 (3d Cir. 2012).

However, Icon and Mudireddy have not provided the Court with a proposed prejudgment interest rate or any proposed calculations for such an award. In addition, Icon and Mudireddy did not direct the Court to a date from which the prejudgment interest allegedly began to accrue from all of the possible starting dates, such as when each separate invoice became past due, or when the last invoice became past due, or when the counterclaim was asserted.

Therefore, the part of the motion for summary judgment that concerns an award of prejudgment interest is denied without prejudice. However, Icon and Mudireddy are granted leave to move again within fourteen days for summary judgment on the issue of prejudgment interest. If Icon and Mudireddy choose to do so, they must: (1) file a new notice of motion in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules; and (2) submit a certification that sets forth the appropriate prejudgment interest rate, the date or dates from which the interest calculations are to commence, and the actual calculations for the amount of prejudgment interest allegedly owed.

## CONCLUSION

For the aforementioned reasons, the Court grants the motion filed by Icon and Mudireddy for summary judgment in their favor insofar as the motion concerns: (1) Sapta's claims that are asserted against them; and (2) their counterclaim in the amount of $23,760. However, the Court denies the motion insofar as it concerns an award of prejudgment interest without prejudice.

In view of the disposition detailed above, the Court need not address the

However, Icon and Mudireddy have not provided the Court with a proposed prejudgment interest rate or any proposed calculations for such an award. In addition, Icon and Mudireddy did not direct the Court to a date from which the prejudgment interest allegedly began to accrue from all of the possible starting dates, such as when each separate invoice became past due, or when the last invoice became past due, or when the counterclaim was asserted.

Therefore, the part of the motion for summary judgment that concerns an award of prejudgment interest is denied without prejudice. However, Icon and Mudireddy are granted leave to move again within fourteen days for summary judgment on the issue of prejudgment interest. If Icon and Mudireddy choose to do so, they must: (1) file a new notice of motion in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules; and (2) submit a certification that sets forth the appropriate prejudgment interest rate, the date or dates from which the interest calculations are to commence, and the actual calculations for the amount of prejudgment interest allegedly owed.

## CONCLUSION

For the aforementioned reasons, the Court grants the motion filed by Icon and Mudireddy for summary judgment in their favor insofar as the motion concerns: (1) Sapta's claims that are asserted against them; and (2) their counterclaim in the amount of $23,760. However, the Court denies the motion insofar as it concerns an award of prejudgment interest without prejudice.

In view of the disposition detailed above, the Court need not address the

alternative arguments raised by Icon and Mudireddy in support of their motion for summary judgment. The Court will enter an appropriate order and judgment.

											_____
											**JOSE L. LINARES**
											Chief Judge, United States District Court

Dated: October __2nd__, 2017